```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------X
BTEC TURBINES, LP,            :
                              :
           Plaintiff          :
                              :
     v.                       :        NO. 3:03cv01207 (EBB)
                              :
THE CONNECTICUT LIGHT AND     :
POWER COMPANY,                :
                              :
           Defendant          :
                              :
------------------------------X
```

## RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS AMENDED COMPLAINT [DOC. NO. 92]

Before the Court is Plaintiff's Motion for Leave to Amend its Amended Complaint [Doc No. 92]. Plaintiff seeks to add three counts to its Amended Complaint: (1) breach of implied contract and promissory estoppel, (2) unjust enrichment/quantum meruit and (3) misrepresentation. For the following reasons, Plaintiff's motion [Doc. No. 92] is GRANTED IN PART and DENIED IN PART, subject to certain conditions.

### Background

This case is a suit for damages for breach of contract. The contract called for BTEC Turbines LP ("BTEC" or "Plaintiff") to build a barge-mounted electricity generator for Connecticut Light and Power Company ("CL&P" or "Defendant") in order to supply Southwestern Connecticut with electricity for the summer of 2003. In its First Amended Complaint, BTEC claimed that CL&P terminated this contract "for convenience", and as such, BTEC was entitled to

recover $2,550,000 pursuant to the fixed-sum schedule for terminations for convenience set forth in the contract, less payments already made by CL&P ($500,000), for a total net due of $2,050,000. [Doc. No. 5]. In response, CL&P asserted the following affirmative defenses: (1) Plaintiff's breach of contract, (2) the force majeure provision in the contract, (3) estoppel, (4) waiver, (5) mutual mistake, (6) unilateral mistake, (7) fraud in the inducement, (8) unclean hands, (9) misrepresentation, (10) failure to mitigate and (11) failure to state a claim upon which relief may be granted. CL&P also asserted a counterclaim alleging that BTEC breached and anticipatorily breached its contractual obligations, and claimed damages of its own for this breach. BTEC's reply to CL&P denied the essential allegations of the counterclaim. In addition, BTEC moved for partial summary judgment on the counterclaim arguing that the Defendant's damages, if any, for breach or anticipatory breach of the contract were limited by the limitation of liability provision in the contract.[1] The Court denied this motion for summary judgment, holding that because CL&P's affirmative defenses challenged the validity of the contract as a whole, the Court could not determine whether CL&P was bound by

---

[1]Section 14 of the contract contained the following limited liability provision:
"Neither party shall be liable to the other party hereunder for any consequential, incidental, punitive, exemplary or indirect damages, lost profits or other business interruption damages, whether in contract, tort (including negligence and strict liability) or otherwise. In no event shall Owner's [BTEC] liability to Utility [CL&P] hereunder exceed the amount of the Progress Payments and Fixed Cost Charges actually received by Owner." BTEC argued that this provision precluded CL&P as a matter of law from recovering the consequential and incidental damages it sought in the counterclaim.

the limited liability provision until the trier of fact resolved the genuine issues of material fact underlying CL&P's affirmative defenses. [Doc. No. 87].

BTEC now seeks to add three additional counts to its complaint. First, BTEC alleges breach of implied contract and promissory estoppel. Specifically, BTEC argues that as an inducement for BTEC pursuing its bid, CL&P represented and promised to BTEC that it (1) had obtained and leased a suitable site on Stamford Harbor for 18 months, with an option for another 18 months, (2) understood that the tight timeframe meant that obtaining the necessary permits would require preferential and expedited treatment by the regulatory authorities, (3) had already made contacts and arrangements with these regulatory authorities in order to facilitate the approval of the installation of a barge-mounted generation facility, (4) had represented to BTEC that permitting should not be an issue and (5) had promised BTEC the opportunity for a multi-year generation contract over at least 2 to 3 years. Proposed Sec. Amend. Compl. at ¶ 18 [Doc. No. 92]. BTEC alleges that, unbeknownst to it, CL&P failed to make these contacts with the regulatory authorities and had not in fact obtained or leased the site on Stamford Harbor. Id. at ¶¶ 33-34. BTEC also alleges that after the regulatory agencies raised concerns about the barge-mounted project, CL&P repeatedly induced BTEC to pursue development of a land-based alternative proposal by "representing and promising that CL&P would decide how to move forward on the

[alternative] within 24 hours of receiving it from BTEC and would agree to reimburse BTEC for the additional costs of preparing [an alternative proposal]." Id. at ¶ 39. BTEC contends that, at all times, it acted in reliance on CL&P's promises and representations, to its detriment. Id. at ¶ 65. As a consequence, BTEC argues that it has incurred and sustained direct, consequential and incidental damages, including loss of profits, and that CL&P is estopped from denying its liability to pay BTEC for these damages. Id. at ¶¶ 68-69.

Second, BTEC alleges quantum meruit and/or unjust enrichment. According to BTEC, it performed services and incurred costs and expenses in developing both the barge-mounted facility and the land based alternative proposal. BTEC alleges that CL&P received the benefit of these services and was aware that BTEC expected payment. Id. at ¶¶ 71-72.

Finally, BTEC alleges misrepresentation. Specifically, it argues that the promises and representations made by CL&P were untrue and false when made, and that CL&P either knew this to be true, or acted with negligence in making these representations. Id. at ¶ 73.

## Standard of Review

### I. Fed. R. Civ. P. 15(a)

Leave to file an amended complaint "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), and a decision to grant

4

or deny a motion to amend is within the sound discretion of the trial court. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); John Hancock Mut Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994). The Supreme Court has held that "absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment," leave to amend should be granted. Foman, 371 U.S. at 182, 83 S.Ct. 227. In addition, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).

"Perhaps . . . the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §§ 1487-1488 (2d ed. 1990) (hereinafter Wright & Miller) (discussing reasons why leave to amend may be denied). To determine if undue prejudice will result, the court must consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d

5

Cir. 1993). In addition, the court must "weigh[ ] the potential for prejudice resulting from granting the amendment against the risk of prejudice to the moving party if the amendment is denied." H.L. Hayden Co. v. Siemens Medical Systems, 112 F.R.D. 417, 419 (S.D.N.Y. 1986), citing L.D. Schreiber Cheese Co., Inc. v. Clearfield Cheese Co., Inc., 495 F.Supp. 313, 315 (W.D. Pa. 1980); see also Wright & Miller §§ 1487-1488 (stating that the court should inquire into "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.")

Under Rule 15(a), a district court may, in its discretion, impose reasonable conditions on the movant when granting leave to amend. Hayden v. Feldman, 159 F.R.D. 452, 454 (S.D.N.Y. 1995) citing Parissi v. Foley, 203 F.2d 454, 455 (2d Cir. 1953). This allows the court to "balance the interests of the party seeking the amendment against those of the party objecting to it." Hewlett-Packard Co. v. Factory Mutual Insurance Co., No. 04 Civ. 2791, 2006 WL 1788946 at *13 (S.D.N.Y. June 28, 2006), citing Wright and Miller § 1486 (2005). "The most common condition imposed on an amending party is costs." Polycast Tech. Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 939 (S.D.N.Y. 1989).

**II. Rule 15(c)(2)**

"[A] motion to amend is futile if the claims sought to be

added are barred by the relevant statute of limitations." Northbrook Nat. Ins. Co. v. J & R Vending Corp., 167 F.R.D. 643, 647 (E.D.N.Y. 1996), citing Deluca v. Atlantic Refining Co., 176 F.2d 421 (2d Cir. 1949), cert. denied, 338 U.S. 943, 70 S.Ct. 423 (1950). However, under Rule 15(c)(2), a claim that would otherwise be barred by the statute of limitations may be allowed if it "relates back" to an earlier complaint. Wilson v. Fairchild Republic Co., Inc., 143 F.3d 733, 738 (2d Cir. 1998). A claim "relates back" if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . ." Fed. R. Civ. P. 15(c)(2).

## Discussion

### I. The Statue of Limitations and Rule 15(c)(2)

As a threshold matter, the Court must consider whether any of the claims are barred by the applicable statutes of limitations, and if so, whether the proposed amendment "relates back" under Rule 15(c)(2).

*1) Promissory Estoppel/Implied Contract*

Promissory estoppel "serves as an alternative basis to enforce a contract in the absence of competing common law considerations." Torringford Farms Ass'n v. Torrington, 75 Conn. App. 570, 576-77, 816 A.2d 736 (2003). In Connecticut, the six year statute of limitations for breach of contract, as set forth in Conn. Gen. Stat § 52-576(a), applies directly to a claim of promissory estoppel because "such a claim is a claim for breach of contract." Id. at

570. Therefore, the statute of limitations has not yet run.

*2) Unjust Enrichment/Quantum Meruit*

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." 5 Williston, Contracts (Rev. Ed.) § 1479. An unjust enrichment claim is based in equity. Although "[t]here is no Connecticut appellate authority that squarely addresses the applicable statute of limitations for unjust enrichment," Gianetti v. Individual Practice, Superior Court, judicial district of Waterbury, Docket No. CV 02 4001685 (July 21, 2005, Schuman, J.) (39 Conn. L. Rptr. 745), lower courts that have considered the issue have concluded that "[b]ecause unjust enrichment is a form of contract action, often called quasi-contract . . . the most applicable statute . . . is the six-year contract statute." Id. (internal quotation marks omitted); see also Flaherty v. Naugatuck, Superior Court, judicial district of Waterbury, Docket No. CV 4004400 (February 2, 2007, Gillian, J.) (applying six year statute of limitations to claim of unjust enrichment). Thus, this claim is also not barred by the statute of limitations.

*3) Misrepresentation*

Misrepresentation, on the other hand, is an action sounding in tort that is governed by the three year statute of limitations set forth in Conn. Gen. Stat. § 52-577. See, e.g. Krondes v. Norwalk Sav. Soc., 53 Conn. App. 102, 728 A.2d 1103 (Conn. App. 1999).

8

Because the relevant conduct in this case happened in April 2003, BTEC's misrepresentation claim would be time barred. However, under Rule 15(c)(2), "[a]mendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'" Mayle v. Felix, 545 U.S. 644, 653, 125 S.Ct. 2562, 2569 (2005) (internal citations omitted). "A court may deny leave to amend based wholly or partially on its belief that any amendment would not relate back." Slayton v. American Exp. Co., 460 F.3d 215, 226 n.11 (2d Cir. 2006) (internal citations and quotation marks omitted).

New allegations in the amended pleading relate back if they amplify the facts alleged in the original pleading or set forth those facts with greater specificity. Conteh v. City of New York, No. 00 Civ. 5787, 2001 WL 736783, at *3 (S.D.N.Y., June 28, 2001) (internal citations omitted). A revised pleading will also relate back if it asserts new legal theories based on the same series of transactions or occurrences. White v. White Rose Food, 128 F.3d 110, 116 (2d Cir. 1997). However, an amended complaint will not relate back if it is based on new facts and different transactions. In re Chaus Sec. Litig., 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992). Because Rule 15(c)(2) "relaxes, but does not obliterate, the statute of limitations," relation back "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. at 659, 125 S.Ct. at

2572 (internal citations omitted).

The principal inquiry under Rule 15(c) is whether adequate notice has been given to the opposing party by the "general fact situation alleged in the *original* pleading." Schiavone v. Fortune, 477 U.S. 21, 31 (1986)(emphasis added); see also United States v. The Baylor University Medical Center, 469 F.3d 263, 270 (2d Cir. 2006) ("the touchstone for relation back pursuant to Rule 15(c)(2) is notice").

In the present case, relation-back is not appropriate. BTEC's original Amended Complaint alleged breach of contract, and the factual allegations in support of this claim focused on the express terms of the contract and on the parties' conduct after the contract was entered into. The only allegation relating to the formation of the contract was BTEC's assertion that "[b]etween March 28, 2003 and April 11, 2003, representatives of the parties met in Berlin, Connecticut and on the site in Stamford, and conferred in person, by mail, e-mail and telephone to negotiate for a contract." Amend. Compl. at ¶ 12 [Doc. No. 5]. BTEC did not allege any facts concerning CL&P's behavior and representations during these negotiations. In contrast, in support of its motion for leave to amend its complaint to add a claim of misrepresentation, BTEC has put forth new factual allegations relating to the formation of the contract. These include allegations that, before the contract was entered into, CL&P had misrepresented to BTEC that it would make arrangements with the

requisite regulatory authorities, id. at ¶ 32, seek guidance from the Department of Environmental Protection, id., and obtain and lease a suitable site on Stamford Harbor where a barge-mounted facility could be docked. Id. at ¶ 33. Thus, relation-back is not warranted because BTEC's new legal theory is not based on the same facts alleged in the original amended complaint. See, e.g. Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 36 (2d Cir. 2002), rev'd on other grounds (finding that an amended RICO claim did not relate back to an original FLSA claim because "rather than adding a new legal theory based on the same facts as those presented in the original complaint, the plaintiff's amendment introduced a significant new factual allegation that fundamentally changed the nature of the allegations, both factual and legal, that the plaintiff was asserting against the defendants."). Accordingly, BTEC's motion for leave to amend to add a claim of misrepresentation is denied.

## II. Rule 15(a)

In addition to considerations of futility, a motion for leave to amend under Rule 15(a) should also be denied if the opposing party would suffer undue prejudice. Foman, 371 U.S. at 182, 83 S.Ct. 227. Delaying the resolution of a dispute and causing a party to expend significant additional resources to conduct discovery and prepare for trial weighs heavily in determining whether undue prejudice will result from granting leave to amend a complaint. Block, 988 F.2d at 350. Accordingly, "a proposed

11

amendment . . . [is] especially prejudicial . . . [when] discovery ha[s] already been completed and the [non-movant] ha[s] already filed a motion for summary judgment." Krumme v. WestPoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998) (internal quotation marks and citation omitted); see also Aetna Casualty and Surety Co. V. Aniero Concrete Co., Inc., 404 F.3d 566, 581 (2d Cir. 2005) ("[T]he liberal provisions for amendment under the Federal Rules are restricted following the filing of a motion for summary judgment and the completion of discovery . . .").

Discovery in this case was completed over two years ago, and a trial is set to begin in two months. All dispositive motions have been filed and ruled upon. In comparable situations, many district courts in this Circuit have denied a movant's request to amend their pleadings. See, e.g., Zahra v. Town of Southland, 48 F.3d 674, 686 (2d Cir. 1995) (reasonable to deny leave to amend sought two years after action commenced and three months before trial); State Trading Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (finding prejudice where defendant had already filed motion for summary judgment); Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp., No. 03 Civ. 9547, 2004 WL 2903772, at *4 (S.D.N.Y. Dec. 15, 2004) (denying defendant's motion for leave to amend its answer and add counterclaims where the amendment would interfere with the scheduling order, cause prejudice to the non-movant by extending discovery time, and where defendant failed to give a good-faith

basis for the delay); <u>NAS Electronics, Inc. v. Transtech Electronics Pte Ltd.</u>, 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003) (holding that a delay of "nearly two years to seek leave to file an Amended Complaint" was "sufficient to constitute prejudice so as to deny a motion to amend, even under the Rule 15(a) liberal 'freely given' standard.") (<u>citing</u> <u>Zahra</u>, 48 F.3d at 685-86); <u>Levy v. Kosher Overseers Assoc. of America</u>, 2000 WL 294842, at *6 (S.D.N.Y. Mar. 21, 2000) (denying defendant leave to amend after close of discovery and after plaintiff's motion for summary judgment had been granted); <u>Dais v. Lane Bryant, Inc.</u>, 2000 WL 145755, at *2 (S.D.N.Y. Feb. 8, 2000) (motion to amend denied where sought one year after complaint was filed and one month after close of discovery).

BTEC justifies its delay in seeking leave to amend by arguing that it had to wait for the Court's ruling on its motion for partial summary judgment. BTEC argues that it was the Court's denial of this motion that "permitted CL&P an opportunity to dispute the validity [of] the contract . . . and to offer proof of damages and claim damages that are not measured by the liquidated damages clause of the contract," Pl. Mem. in Supp. of Mot. at 4 [Doc. No. 92], and that BTEC's proposed amendments "merely permit [it] to make its claims apart from the written contract as the court's ruling on the counterclaim permits defendant to do." <u>Id.</u> This is a mischaraterization of the Court's ruling, which did not suddenly "permit" CL&P to make new claims. The claims that CL&P

made challenging the validity of the contract were contained in its affirmative defenses against BTEC's invocation of the limitation of liability provision. These affirmative defenses were filed on September 30, 2003. [Doc. No. 16].[2] The Court's ruling merely held that, in light of these defenses, a decision applying the limitation of liability provision would be premature. Thus, to the extent that BTEC seeks to use the Court's ruling to justify its delay in moving to amend its complaint, this reliance is misplaced.

BTEC also contends that, despite the significant delay in moving to amend its complaint, there would be no undue prejudice to CL&P in granting the motion because any additional discovery should be minimal and mainly limited to damages issues, as "all of the fact witnesses have been thoroughly deposed and extensive written discovery conducted." Pl. Mem. in Supp. of Mot. at 5 [Doc. No. 92].

The burden of additional discovery, standing alone, is not a proper basis to deny leave to amend a pleading. United States on Behalf of Maritime Admin. v. Continental Illinois Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989), citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 43 (2d Cir. 1979) (stating that "[an]

---

[2] Arguably, some of CL&P's affirmative defenses should have been pled as counterclaims from the outset. However, this misdesignation is immaterial. See Reiter v. Cooper, 507 U.S. 258, 263, 113 S.Ct. 1213, 1217 (1993) (stating that "it makes no difference that petitioners may have mistakenly designated their counterclaims as defenses, since Federal Rule of Civil Procedure 8(c) provides that 'the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.'") (internal citations omitted).

14

adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."). This is true even if, as here, discovery has already been completed. See Miller v. Selsky 234 F.3d 1262 (2d Cir. 2000) (summary order), citing Hanlin v. Mitchelson, 794 F.2d 834 (2d Cir. 1986) (stating that a party may still "amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint.").

However, the burden of additional discovery is still a factor that the Court must consider in determining whether an amendment would be unduly prejudicial to CL&P. Here, BTEC is pleading categories of damages that have not been encompassed in the discovery conducted to date[3], and new claims for relief that go beyond the express terms of the contract. Thus, although many of BTEC's new factual allegations have already been the subject of discovery, it is clear that CL&P will require additional discovery in order to respond to BTEC's new claims.

Despite this burden of additional discovery, the Court must also consider the risk of prejudice to BTEC if its motion to amend was denied. See H.L. Hayden Co., 112 F.R.D. at 417; Wright and Miller, §§ 1487-1488. BTEC's original Amended Complaint was only

---

[3] For example, CL&P argues that it has not conducted any discovery on any claimed consequential and incidental damages or lost profits because, to date, BTEC had only claimed the defined sum under the termination of convenience clause of the contract.

15

based upon the express terms of the April 11, 2003 contract between itself and CL&P. Thus, as the case is currently pled, BTEC would be substantially prejudiced if the contract was found to be invalid.

Thus, while BTEC's delay and the additional discovery CL&P may have to conduct could be reason enough to deny BTEC's motion to amend, "the Federal Rules and the law of this Circuit recognize a strong policy in favor of allowing the amendment of pleadings to facilitate resolution on the merits." <u>Hewlett Packard Co. v. Factory Mutual Insurance Co.</u>, No. 04 Civ. 2791, 2006 WL 1788946, at *17 (S.D.N.Y. June 28, 2006). Thus, the Court must consider the prejudice to CL&P if the motion is granted, the prejudice to BTEC if it is denied, and the interest in resolving this dispute on its merits. In light of these competing concerns, the Court conditionally grants BTEC motion for leave to amend its amended complaint to add the claims of (1) breach of implied contract/promissory estoppel and (2) unjust enrichment/quantum meruit.

As explained above, the Court has the discretion to impose conditions on the grant of leave to amend, including costs. "'Granting conditional leave allows a court to prevent prejudice, and at the same time, to freely allow amendments in accordance with the spirit of Rule 15.'" <u>H.L. Hayden Co.</u>, 112 F.R.D. at 419, <u>quoting</u> 3 Moore's Federal Practice § 15.17[2] (3d ed. 2005). The imposition of costs "is particularly appropriate where the

amendment would otherwise force the opposing party to incur the costs of re-deposing witnesses, or otherwise engaging in 'duplicative' discovery." Hewlett, 2006 WL 1788946, at *17, citing Polycast Tech. Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 943-44 (S.D.N.Y. 1989).

Here, the imposition of costs is especially appropriate in order to prevent any prejudice to CL&P caused by BTEC's delay in seeking leave to amend. Accordingly, BTEC may proceed with its new claims of breach of implied contract/promissory estoppel and unjust enrichment/quantum meruit provided that it agrees to pay the costs reasonably incurred by CL&P in taking additional discovery. This includes all reasonable attorneys' fees and other costs incurred in connection with recalling previously deposed witnesses and deposing new witnesses regarding these new claims, including discovery on the alleged direct, consequential and incidental damages incurred by BTEC. Such reasonable attorney costs would include reasonable preparation time, deposition time, travel time, travel expenses, and reporter fees. Any disputes as to the reasonableness of CL&P's fees would be submitted to the Court.

If BTEC accepts this condition, it is directed to notify CL&P and the Court promptly so that the Court may re-open discovery for the limited purpose of discovering the facts underlying BTEC's claims of implied contract/promissory estoppel and unjust enrichment/quantum meruit.

## Conclusion

17

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Its Amended Complaint [Doc. No. 92] is conditionally GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's motion to add a claim of misrepresentation is DENIED. Plaintiff's motion to add claims of breach of implied contract/promissory estoppel and unjust enrichment/quantum meruit is GRANTED, subject to Plaintiff's willingness to accept the foregoing conditions.

SO ORDERED

_____/s/_____

ELLEN BREE BURNS

SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 19th day of December 2007.